MARKEY, Chief Judge.
Disappointed bidders Grimberg and Schlosser jointly filed a post-award complaint in the Claims Court seeking termination and award to them of certain contracts awarded to another. They concurrently filed motions for a Temporary Restraining Order and a Preliminary Injunction. The Claims Court denied the motions and transferred the complaint to the District Court for the District of Columbia, 1 Cl.Ct. 253. We affirm.[1]

Background

P.W. Parker Inc. (Parker), was the apparent winner on two contract bids opened on July 8, 1982, and September 13, 1982, respectively. On its bids, Parker identified its wholly-owned subsidiary, R & P Contractors (R & P), as subcontractor on all mechanical work.
On July 12, 1982, Grimberg protested to the GSA contracting officer that the listing *1364 of R & P, over which Parker had complete control, violated paragraph 10 of the Special Conditions of the Invitation for Bid.[2] By letter of July 29, 1982, the contracting officer acknowledged the protest, stating: “The bids are being evaluated by the contracting officer, and you will be advised of his decision.”
On September 16, 1982, Schlosser made the same protest to the contracting officer respecting the bid opened on September 13, 1982. By letter of September 20, 1982, the contracting officer acknowledged the protest, stating: “The bids are being evaluated and you will be advised of our decision before an award is made.”
On September 29 and 30, GSA awarded Parker the contracts.[3]
Grimberg and Schlosser jointly filed on October 4, 1982, the present complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, and Declaratory Judgment, and concurrently filed Motions for a Temporary Restraining Order and Preliminary Injunction. On October 5, 1982, the government moved to dismiss for lack of jurisdiction.
In an Order entered October 7, 1982, Judge Willi of the Claims Court denied Grimberg’s and Schlosser’s motions for lack of jurisdiction under 28 U.S.C. § 1491(a)(3) (Supp V 1981), as amended by Federal Courts Improvement Act of 1982, Pub.L. No. 97-164, § 133(a), 96 Stat. 25, 40 (1982) (Act),[4] and transferred the case to the district court pursuant to § 301(a) of the Act [to be codified at 28 U.S.C. § 1631].[5]

*1365
Issues

I) Whether the Claims Court lacks jurisdiction to grant equitable relief in a suit brought after a contract has been awarded.
II) Whether the Claims Court erred in transferring the case.
OPINION
I — Jurisdiction
The dispute respecting jurisdiction arises because the complaint was filed in the Claims Court after the award of the contracts, making this a “post-award” suit, and because Grimberg and Schlosser are seeking equitable and only equitable relief.
A. The Statute
Analysis must begin with the language of the statute. Southeastern Community College v. Davis, 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979). See also, Greyhound Corp. v. Mount Hood Stages, Inc., 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1978); Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 472, 97 S.Ct. 1292, 1300, 51 L.Ed.2d 480 (1977); Blue Chips Stamps v. Manor Drug Stores, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J. concurring). Title 28, Section 1491(a)(3), supra note 4, reads in pertinent part: “To afford complete relief on any contract claim brought before the contract is awarded, the court shall have ... jurisdiction to grant declaratory judgments and ... equitable ... relief .... In exercising .... ”
As discussed below, subsection (a)(3) is composed of five parts. The first part (“To afford complete relief”) sets the purpose of its enactment, i.e., to authorize a new remedial power. The second part (“on any contract claim”) establishes and limits the types of cases within the court’s jurisdiction in which the power may be exercised. The third part (“brought before the contract is awarded”) establishes and limits the time frame in which the power may be exercised. The fourth part (“declaratory judgments and such equitable and extraordinary relief as it deems proper”) describes the power itself. The fifth part (“give due regard to the interests of material defense and national security”) cautions the court in the use of its new power.
(1) The Single Word “Claim”
Grimberg and Schlosser would have us read subsection (a)(3) as though it contained words not there (“brought to the contracting officer before the contract is awarded”, or “brought to court before or after the contract is awarded”), and as though it authorized the court to exercise its new power at any time. Their sole basis for suggesting that the statute may be so read lies in the single word “claim” in subsection (a)(3), and a contention that it means a claim filed with the contracting officer. They maintain that the filing of a claim with the contracting officer before the contract is awarded is sufficient to confer jurisdiction in the Claims Court to grant equitable relief in response to a complaint based on that claim, no matter when that complaint is filed in that court. Grimberg and Schlosser’s difficulty is that the statute simply does not say “The Claims Court may grant equitable relief on a contract claim at any time if the claim had been brought to the contracting officer before the contract was awarded”, and we are not at liberty to rewrite the statute in those terms.
Grimberg and Schlosser have been aided, in erecting their argument on the single word “claim”, by the propensity of the Congress, the courts, and others, for using that word to mean different things in different contexts. In connection with government agencies, the word has meant an assertion or demand submitted to the agency. In connection with courts, it has been used to mean an “action”, or a cause of action, or an assertion in a pleading.
That the word “claim”, standing alone, may be considered ambiguous because it has been used with different meanings in different statutes, is true but unavailing. Nor is it helpful to note that most if not all “claims” against the government existed, or became vested, or were made to or filed with a government agency, as “claims” be *1366 fore being brought to a court. It is hard to visualize a “claim” properly called such in court which did not accrue as a “claim” at some time earlier than its presentation in court. Indeed, the entire statute of limitations jurisprudence rests on that concept.
Nor does it aid decision to note Congress’ frequent use of “claim” in referring to both pre-court and in-court situations, often interchangeably. Nor does it follow that interpretation of “claim” as an action in court means that it was not also a “claim” at an earlier time. “Claim” cannot be considered in a vacuum. We sit to interpret a statute, not a word.
(2) As Used In the Statute
In Erlenbaugh v. U.S., 409 U.S. 239, 244, 93 S.Ct. 477, 480, 34 L.Ed.2d 446 (1972), the Court referred to “the principle that individual sections of a single statute should be construed together .... ” We look, therefore, to uses of “claim” in all of the portions of § 1491(a). In doing so, we note § 1491(a) is a statute dealing with a court and suits against the sovereign. Section 1491(a) grants subject matter jurisdiction (subsection (a)(1); last sentence of (a)(2)), authorizes certain remedial actions (forepart of (a)(2)), and permits the exercise of equitable power in certain cases at a certain time ((a)(3)).[6]
Subsection (a)(3) is thus part of a statute (§ 1491(a)) in which Congress has defined the jurisdiction of the Claims Court to hear and determine suits and has spelled out actions the court may take in particular cases within that jurisdiction. Comparison of the grant in subsection (a)(3) with the grant in the adjacent subsections of the same statute, Title 28, Section 1491(a), supra note 4, (general jurisdiction “to render judgment upon any claim against the United States” in subsection (a)(1), and “to render judgment upon any claim by or against ... a contractor” in subsection (a)(2)) (emphasis added) would indicate that Congress intended a limited grant of power to grant an equitable remedy in subsection (a)(3) (“on any contract claim brought before the contract is awarded”).
“Claim” appears in subsections (a)(1) and in the last sentence of (a)(2), supra note 4, in the phrase (“jurisdiction to render judgment upon any claim”) granting subject matter jurisdiction.[7] In those instances, “claim” necessarily means a claim filed with the Claims Court, for the court would necessarily lack both jurisdiction and ability to “render judgment” on a claim not filed in the court. Similarly, “contract claim” appears in (a)(3) immediately after “To afford complete relief on any .... ” Thus the “contract claim” must be both within the court’s jurisdiction established in subsection (a)(1) and brought to the court before the court may grant any relief.
Further, a plaintiff may not obtain equitable relief just because a court has the power to grant it, but must state a claim which is itself within the jurisdiction of the court. Appropriately, therefore, subsection (a)(3) specifies the nature of the “claim” upon which declaratory judgments and equitable relief may be granted, namely a “contract claim”. Subsection (a)(3). thus provides a new remedy in respect of a particular type of claim (contract) over which the court was granted jurisdiction in (a)(1) and does not provide that remedy in respect of other types of claims set forth in subsection (a)(1).
*1367 Jurisdiction is granted in (a)(1) over a claim founded upon “any express or implied contract”. Neither Grimberg nor Schlosser has, of course, an express contract with the United States. Though the present complaints do not spell out the “contract claim” relied upon, and do not refer to subsection (a)(1), a fair construction indicates reliance on an implied contract to have the involved bids fairly and honestly considered. Moreover, only an implied contract claim is available to those who, like Grimberg and Schlosser, are bidders, not contractors. The “contract” in the phrase “brought before the contract is awarded” in (a)(3) is an express contract awarded to another, if awarded at all. It is not the implied contract on which a claim may be brought for equitable relief under (a)(3) and which is never “awarded”. Thus (a)(3) made an equitable remedy available when a claim over which the court has jurisdiction (implied contract under (a)(1)) is filed in the court before a contract has been awarded.[8]
Grimberg and Schlosser have introduced no evidence, and none may be discerned anywhere in the record, that Congress intended suddenly to switch from the meaning of “claim” in subsections (a)(1) and (a)(2), where it meant a claim within the jurisdiction of the court to render judgment when the claim was brought to the court, to a different meaning (i.e., a claim filed with a contracting officer) in subsection (a)(3). On the contrary, because (a)(3) was being added to (a)(1), which set forth the Claims Court’s jurisdiction to grant judgments on claims founded upon express or implied contracts, and to (a)(2), in which two of its three sentences set forth actions that court may take, it would appear logical that the legislative drafters would employ the same word and meaning, never dreaming or discussing the notion that resourceful counsel bent on achieving a particular result might interpret the single word “claim” in (a)(3) as referring to a claim filed with a contracting officer.[9]
Similarly, the use of “claim” in (a)(3) itself, read in context, requires that the equitable powers of the Claims Court be limited to the pre-award stage. It will not do to speak of subsection (a)(3) as merely “granting jurisdiction” over a contract claim. That jurisdiction had already been granted in (a)(1). As above indicated, (a)(3) grants a power to act (“To afford complete relief on any contract claim”). Though a “contract claim” is certainly a “claim” while it sits on a contracting officer’s desk, the “grant complete relief” language of the statute establishes that Congress was dealing with the in-court time frame. It was not dealing with an earlier time frame, i.e., when the claim was filed with the contracting officer. It was not, in other words, establishing an “exhaustion of administrative remedies” requirement appropriate to proceedings under the Administrative Procedure Act which are not within the jurisdiction of the Claims Court. Congress was granting equitable powers and limiting their exercise to a particular stage in the government procurement process, i.e., the pre-award stage.
As indicated, we deal here not with the word “claim” as found in the dictionary or in substantive statutes, but with “claim” as used in a statute defining the newly granted power of the Claims Court to grant declaratory judgments and equitable relief. *1368 That Congress there used “claim” (rather than “action” or “lawsuit”) to mean a claim brought to the court is not surprising, for it has done so not only in subsections (a)(1) and (a)(2) but in other statutes defining the jurisdiction of the Claims Court, see 28 U.S.C. §§ 1495-1497, 1499 (1976) (amended 1982) (“The United States Claims Court shall have jurisdiction to render judgment upon any claim ... ”), and has used the terms interchangeably, see 28 U.S.C. § 1346(a)(2) (1976) (amended 1982) (“The district courts shall have original jurisdiction ... of: (2) Any other civil action or claim ....”)
Pointing to some uses of “claim” in the Contract Disputes Act (CDA), 41 U.S.C. §§ 601-613 (Supp. V 1981), as amended by § 156 of the Act, Grimberg and Schlosser suggest that subsection (a)(3) should be read in pari materia with the CDA. First, the CDA deals with contractors, not with disappointed bidders such as Grimberg and Schlosser. Second, section 8(d) of that Act includes the phrase “a litigant asserting a contract claim in the United States Claims Court’, 41 U.S.C. § 607(d) (amended 1982) (emphasis added). Following Grimberg and Schlosser’s suggestion would, if 8(d) be looked to, defeat their purpose. Third, the “in pari materia” canon of statutory construction cannot be relied upon to give “claim” in subsection (a)(3) a meaning that might be found at some points in a separate statute, and to deny it the meaning found at other points in that statute. Fourth, a meaning found in a separate statute cannot override that found in adjacent subsections of the very statute in which it appears, i.e., subsections (a)(1) and (a)(2).[10] “[T]he plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover.” Chandler v. Roudebush, 425 U.S. 840, 848, 96 S.Ct. 1949, 1953, 48 L.Ed.2d 416 (1976), quoting Lynch v. Alworth-Stephens Co., 267 U.S. 364, 370, 45 S.Ct. 274, 275, 69 L.Ed. 660 (1925).
The words of the statute grant equitable powers to the Claims Court and limit the exercise of those powers to claims “brought before the contract is awarded”. Use of the present tense (“is awarded”), rather than the past tense (“was awarded”), would appear to preclude exercise of equity power where, as here, the contract was awarded before the claim was filed in the court. Because the statute was dealing with the powers of the court, and because those powers are not exercisable until a claim is brought to the court, there is not a word in the statute referring to the contracting officer, and no basis appears anywhere for reading into it a role for the contracting officer. Nor is there anywhere in this statute (as there is in the standard disputes clause and the Contract Disputes Act, neither of which are before us) a requirement that an implied contract claim be submitted to a contracting officer before it may be brought to the Claims Court. Similarly, the words of the statute make no grant of equitable powers to the Claims Court in relation to post-award cases.
Further considering the words of the statute, subsection (a)(3) closes with an abjuration that the court “give due regard to the interests of national defense and national security” in exercising its new equitable powers. That caution would appear particularly applicable to court-created delays in awarding contracts. In a post-award suit, the contract has been awarded, and the procurement process itself is not normally delayed while the court is considering the merits of a disappointed bidder’s complaint.
In all events, and whatever may be said of the words appearing in the statute,[11] and *1369 of their equitable remedy context, the legislative history makes eminently plain that Congress intended to limit exercise of the Claims Court’s equitable powers to contract claims brought to the court before the contract is awarded. In essence, Congress intended to limit exercise of equitable powers by the Claims Court to the pre-award stage (without regard to whether a claim had been filed with a contracting officer), and to avoid the exercise of those powers by that court in the post-award, administration stage. Because it is our duty to carry out the intent of the Congress, to the fullest extent to which it is discoverable, we devote extended discussion to the statute’s legislative history.
B. Legislative History
Interpretation of “claim” in subsection (a)(3) as meaning a claim filed in the Claims Court, which is but another way of saying that the Claims Court may exercise its new equitable powers only during the pre-award stage, finds extensive support in the legislative history of the Act. H.R.Rep. No. 312, 97th Cong., 1st Sess. 43 (1981) states: “The new section 1491(a) does give the new Claims Court the augmented power to grant declaratory judgments and give equitable relief in contract actions prior to award.” (emphasis added). S.Rep. No. 275, 97th Cong., 1st Sess. 22 (1981), U.S.Code Cong. & Admin.News 1982, pp. 11, 32 states: “Moreover, section 133 gives the new Claims Court the power to grant declaratory judgments and give equitable relief in contract actions prior to award.” (emphasis added). It would appear difficult to read “contract actions prior to award” as referring to anything other than pre-award lawsuits filed with the court described in the same sentences as having been granted equitable powers in such “actions”.
The earliest versions of the Act, introduced in the 96th Congress, did not grant the newly-created Claims Court any equitable powers in any case. See S. 1477, 96th Cong., 1st Sess. (1979); H.R. 3806, 96th Cong., 2nd Sess. (1980). As stated in the House Report on H.R. 3806, with one minor exception, “Claims Court jurisdiction is identical to Court of Claims jurisdiction.” H.Rep. No. 1300, 96th Cong., 2nd Sess. 36 (1980) . See also Staff of Senate Comm. On the Judiciary, 96th Cong., 1st Sess., Report on Federal Courts Improvement Act of 1979 (To Accompany S. 1477) 25 (Comm. Print 1979). With a few exceptions not here relevant, the Court of Claims did not have equitable jurisdiction.
The provision conferring equitable power on the Claims Court first appeared in versions of the Act introduced in the first session of the 97th Congress. The provision, identically worded in the Senate and House bills, provided that:
To afford complete relief in controversies within its jurisdiction, the court may grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief ....
S. 21, 97th Cong., 1st Sess. § 132(a)(2) (1981) ; H.R. 2405, 97th Cong., 1st Sess. § 126(d) (1981). That provision was significantly broader than the later version eventually enacted, for it would have given the Claims Court jurisdiction to grant equitable relief in all cases, not just in contract cases and not just on a “contract claim brought before the contract is awarded.”
There appears to have been no discussion of the broad grant of equitable power in the 1981 congressional hearings on the Act or in subsequent floor debates in the House and Senate, but in a letter to the House Judiciary Committee the Justice Department objected strenuously to the grant:
[T]he bill would vastly broaden the equitable power of the Article I Claims Court judges by authorizing them to enter declaratory judgments and grant injunctive *1370 relief. In our view, this vast expansion of power would drastically alter the nature of the Government’s waiver of sovereign immunity and could lead to serious and untoward disruptions in the award and administration of government contracts. The Court of Claims is not simply another district court; it was conceived as a special tribunal to resolve monetary claims against the United States, and we have historically and consistently supported its retention of that role. As former Deputy Assistant Attorney General Irving Jaffe stated before this Committee’s Subcommittee on Administrative Law and Governmental Relations in 1977:
The Court of Claims should remain, as it was intended to be, the special tribunal where monetary claims can be resolved, divorced from the pressures generated by extraordinary proceedings to restrain or compel aspects of contract administration. Congress has, wisely, created the Court of Claims for this specialized task and no grounds exist to change it into another District Court, (emphasis added).
Court of Appeals For the Federal Circuit— 1981, Hearings on H.R. 2405 Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Comm. on the Judiciary, 97th Cong., 1st Sess. 212 (1981) (Letter from Acting Assistant Attorney General Michael W. Dolan to Committee Chairman Peter W. Rodino). As indicated, the chief concern of the Justice Department was that the broad grant of equitable powers would permit Claims Court judges to interfere with both the award and administration of government contracts. For this court now to hold that Claims Court judges have equitable power in post-award cases would defeat the response of Congress to the Justice Department’s concern over that judicial interference with contract administration.[12]
Congress recognized the Justice Department’s concern by limiting the area within which the Claims Court could exercise equitable powers. In the House, the Judiciary Committee amended H.R. 4482 to grant the Claims Court equitable power only “on any contract claim brought before the contract is awarded.” The House Report on the bill sets forth the rationale for this amendment:
One amendment was unanimously approved by the full committee. Offered by Mr. Railsback, on behalf of the Administration, the amendment limited the ability of the new Claims Court to order injunctive and declaratory relief to contract actions prior to award, (emphasis added).
H.Rep. No. 312, 97th Cong., 1st Sess. 30, n. 33 (1981).
That passage sheds significant light. First, it expressly indicates that equitable relief on a contract claim was limited to “contract actions,” that is, lawsuits, brought “prior to award”. That view is further supported at another section of the House Report, which states that “[t]he new Claims Court also will be able to exercise equitable relief power — declaratory judgments and such extraordinary relief as it deems proper, including injunctive relief — in contract actions prior to award.....” H.R.Rep. 312, supra, at 25. (emphasis added). See also H.R.Rep. 312, supra, at 43. (“Nor is it the intent of the Committee to obligate lawyers, litigants and possibly witnesses to travel to Washington, D.C., whenever equitable relief is sought in a contact [sic] action prior to award.”) (emphasis added). Second, the passage expressly states that the amendment limited the ability of the Claims Court to exercise its equitable powers. It would thus be consistent with the intent of Congress to read “claim” narrowly, to mean the basis for a lawsuit brought prior to award; and it would be inconsistent with that intent of Congress to read the provision expansively, as being inclusive of all instances in which a claim had been submitted to a contracting officer before the contract was awarded.
That the Railsback amendment was offered “on behalf of the Administration” *1371 further buttresses the present interpretation. The amended grant of equitable powers incorporated the Justice Department’s concerns over limiting judicial interference with the administration of government contracts. Though Congress did not fully agree with the Justice Department’s position denying all equitable jurisdiction, it clearly responded to the Justice Department’s concern that judicial interference in federal contracting be limited to actions brought in the Claims Court before the contract “is” awarded.[13]
There is a strong public interest in an orderly, efficient, expeditious government procurement process. With numerous contracts based on bids, there is one successful bidder and an untold number of disappointed bidders. Allowing a mere complaint to a contracting officer to trigger exercise of equitable power by the Claims Court over cases brought to it after the contract has been awarded would authorize broad judicial interference with the administration of government contracts; as here, contract actions could be brought after the contract had been awarded, and while it is being administered. That interpretation would thus substantially vitiate Congress’ concern for the contracting process evidenced by introduction of the amendment “on behalf of the administration” and its adoption by the Congress. In contrast, the present interpretation permits judicial interference by the Claims Court only at the pre-award stage of the contracting process, and avoids such interference in the administration of awarded contracts.[14]
The grant of equitable jurisdiction in the Senate bill was also narrow.[15] As reported by the Senate Judiciary Committee, the Senate bill stated:
To afford complete relief in contract actions prior to award, the court shall have exclusive jurisdiction to grant'declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief ... (emphasis added).
S. 1700, 97th Cong., 1st Sess. § 133(a)(3) (1981). Thus that bill, on its face, expressly limited the Claims Court’s equitable jurisdiction to actions brought prior to award.
On the floor of the Senate, Senator Dole, the manager of the bill, explained the need for this provision in a statement repeated in expanded form in the Senate Report:
The fact that the Court of Claims lacks the authority to grant injunctive or declaratory relief to parties that seek its assistance has also been a major problem for litigants in Government contract cases, and has been decried by many practitioners as a glaring defect in its structure.
s}c % * 4s sic sj«
In addition, section 133 of the bill gives the new Claims Court the power to grant declaratory judgments and give equitable relief in controversies within its jurisdiction. This provision will for the first time give the court specializing in certain claims against the Federal Government the ability to grant litigants complete relief. The committee concluded that this provision will avoid the costly duplication in litigation presently required when a citizen seeks both damages and equitable relief against the Government.
*1372 Moreover, section 133 gives the new Claims Court the power to grant declaratory judgments and give equitable relief in contract actions prior to award. Since the funds which the Government utilizes to purchase goods and services are derived solely from public sources, the public possesses a strong interest in the ability of the Government to fulfill its requirements in these areas at the lowest possible cost. Accordingly, in the vast majority of circumstances, the Government must be permitted to exercise its right to conduct business with those suppliers it selects and to do so in an expeditious manner.
The courts ordinarily refrain from interference with the procurement process by declining to enjoin the Government from awarding a contract to a contractor which the Government has selected.
By conferring jurisdiction upon the Claims Court to award injunctive relief in the preaward stage of the procurement process, the bill does not intend to alter the current state of the substantive law in this area. It is expected, and it is our intent, that the court will utilize the authority conferred upon it by this section only in circumstances where the contract, if awarded, would be the result of arbitrary or capricious action by the contracting officials which would deny qualified firms the opportunity to compete fairly for the procurement award .. . (emphasis added).
127 Cong.Rec. S14692-S14694 (daily ed. Dec. 8, 1981). See also S.Rep. No. 275, supra, at 22-23. The quoted passage embodies the limiting principle of the Rails-back Amendment, that is, that the Claims Court’s equitable powers should be exercised in a way which best limits judicial interference in contract procurement and administration. It spoke of injunctions against awarding a contract. It also makes plain that injunctive relief was awardable only in the pre-award stage, and only in extremely limited circumstances.
Consistent with the foregoing is the statement in H.R.Rep. No. 312, supra, at 25, that “the Claims Court [is empowered] to enjoin the award of contracts if, for example, illegal government conduct is involved”, (emphasis added). The court obviously could not “enjoin the award” of contracts already awarded. Nor would a declaratory judgment be appropriate after award. There is nothing anywhere in the legislative history referring to any power in the Claims Court to undo or vacate an awarded contract by way of mandatory injunction or otherwise.
The legislative history thus establishes the intent of Congress, which must be our lodestar, District of Columbia v. Garter, 409 U.S. 418, 420, 93 S.Ct. 602, 604, 34 L.Ed.2d 613 (1973), that equitable power was to be exercised only in contract actions brought in the Claims Court prior to award. Because the House bill was ultimately passed by both Houses of Congress and enacted as the Act, (see 128 Cong.Rec. S2567 (Mar. 22, 1982); 128 Cong.Rec. H747 (Mar. 9, 1982)) its legislative history must be given major weight. The legislative history of the Senate bill, however, establishes the same intent. There is no indication whatever that the Senate believed it was enlarging the time frame for exercise of the Claims Court’s equitable relief powers by acceding to the House bill. In short, the legislative history indicates that the Senate and House Reports used the terms “action” and “claim” interchangeably, as both Houses have often done, both referring to contract actions/claims brought in the Claims Court prior to award.
Because the statute and its legislative history leave no doubt that Congress intended the equitable power of the Claims Court to be exercised only before an award is made, that power can be invoked only by filing a claim with the court before a contract is awarded, and whether a claim had previously been filed with a contracting officer is simply irrelevant.
C. Policy Arguments
Grimberg and Schlosser make a number of sympathy evoking and dire predictions respecting what can happen if the Claims *1373 Court’s exercise of its equitable powers be limited to cases brought prior to award. First they assert that a limitation on the exercise of equitable powers in the Claims Court to pre-award suits, while leaving untouched the equitable powers of the district courts, from which appeals may go to various appellate courts, risks non-uniformity in the law contrary to the intent of the Act. We deal here, however, only with § 1491(a)(3) and its grant to the Claims Court of the power to grant an equitable remedy. That grant is applicable only to pre-award suits brought in that court. The statute is itself silent with respect to the powers of the district courts. Nothing in the statute indicates an intent to change the existing system under which appeals from district courts in post-award suits may be filed in various appellate courts. Further, as discussed below, the legislative history suggests a congressional intent to strike a jurisdictional balance, leaving untouched the powers of the district court in government contract cases.
The second and major policy argument is that limiting the Claims Court’s equitable powers to pre-award suits enables the contracting officer to escape the equitable power of the Claims Court by awarding the contract before disappointed bidders can file their claims in that court, as happened here. The only recourse against that tactic is said to be the filing of premature and perhaps unnecessary protective suits.[16] Though recognizing, as we must, that the possibility exists, we are not prepared to join the conjecture that contracting officers are so lacking in dedication to the integrity of the procurement process that they would rush through awards to undeserving contractors just to keep disappointed bidders out of the Claims Court and force them into post-award suits in the district court. In all events, if there be potential for abuse of a statute, it cannot be controlling. The mere possibility that a contract may be awarded before an implied contract claim can be filed in court cannot be substituted for the constitutional requirement that courts shall exercise only those powers granted by Congress and shall do so only at the times specified by Congress; nor can such a possibility authorize us to expand by fiat that which has been authorized by Congress.[17]
In defining the jurisdiction and powers of the Claims Court, Congress made its own policy decision implementing a balance between the Claims Court and the district courts, and a balance between the interests of disappointed bidders and the public interest in an orderly government procurement process. We may not substitute for those policy decisions one of our own devising. Having accompanied the grant of limited equitable power to the Claims Court with the mandate that it be exercised “before a contract is awarded” and with “due regard to the interests of national defense and national security”, § 1491(a)(3), supra note 4, Congress did not disregard the needs of the government procurement system. Nor may we. Making the injunctive power of the Claims Court available to those protesting bid irregularities before a contract is awarded has not the same effect on the procurement system as would the making of that power available in the Claims Court *1374 to those protesting an award after it has been made.[18]
In all events, we deal here only with a specific statutory grant of equitable power to the Claims Court. If disappointed bidders should in future be confronted with insufficient time in which to invoke the equitable power statutorily granted the Claims Court, their remedy will lie with the Congress, not with the courts.[19]
D. Holding on Jurisdiction
We hold that exercise of the equitable power granted the Claims Court in 28 U.S.C. § 1491(a)(3) (amended 1982) is limited to cases in which complaints are filed in the Claims Court before the involved contracts have been awarded, and that the Claims Court therefore lacked jurisdiction to hear and determine the present demand for equitable relief filed after the involved contracts were awarded.
II. Transfer
Section 1631, supra note 5, provides for transfer to any court “in which the action or appeal could have been brought.” As a post-award suit, the present action “could have been brought” in the district court. The Claims Court, therefore, did not err in issuing its transfer order.
A. Legislative History
Though this is a post-award suit, the parties have engaged in extensive argument over whether the “exclusive” grant of equitable powers to the Claims Court in § 1491(a)(3) in pre-award suits was meant to exclude the district courts from preaward suits. Because nothing in the statute or its legislative history in any manner denies jurisdiction in the district court over post-award suits, and because this is a post-award suit, we need not and do not here decide whether the district courts are denied jurisdiction by § 1491(a)(3) over preaward suits.[20]
To the extent that the legislative history could be said to shed light on the jurisdiction of the district court over this post-award suit, it does so by indicating that even the “exclusive” grant in pre-award suits was apparently not meant to take from the district courts whatever jurisdiction they had in those suits. Surely an apparent intent to leave intact a concurrent district court jurisdiction in pre-award actions, the only actions being dealt with in the statute, cannot be viewed as indicating an intent to remove the existing and unmentioned jurisdiction of the district courts over post-award suits.
The Senate and House Reports are consistent in their indication that the grant in § 1491(a)(3) is exclusive only of contract *1375 boards, and that District Courts retain whatever equitable jurisdiction they had in contract cases under Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859 (D.C.Cir.1970). The House report is explicit:
This enlarged authority is exclusive of the Board of Contract Appeals and not to the exclusion of the district courts. It is not the intent of the Committee to change existing caselaw as to the ability of parties to proceed in the district court pursuant to the provision of the Administrative Procedures Act in instances of illegal agency action. [Scanwell, supra.]. .. Therefore, for the time being, the Committee is satisfied by clothing the Claims Court with enlarged equitable powers not to the exclusion of the district courts. The dual questions of whether these powers should even be broader and of whether they should be exclusive of the district courts will have to wait for a later date, (emphasis added).
H.R.Rep. No. 312, supra, at 43.
The only question raised arises from the Senate Report. Unlike the House Report, it does not expressly state that the Claims Court’s grant has no effect on the jurisdiction of the District Courts, and is only “exclusive” of the boards of contract appeals. However, that understanding can be derived from the Report. First, it states that the grant to the Claims Court is not “intend[ed] to alter the current state of the substantive law in this area. Specifically, the Scanwell doctrine as enunciated by the D.C. Circuit ... is left in tact (sic).” S.Rep. No. 275, supra, at 23, U.S.Code Cong. & Admin.News 1982, p. 33. The government suggests that this statement should be read to mean that only the substantive law aspects of Scanwell survive the grant, and that the grant of exclusive equitable power to the Claims Court robs the District Courts of any and all jurisdiction recognized in Scanwell. However, that argument ignores the “substantive law” of Scanwell and the “Scanwell doctrine”.[21] Scanwell involved judicial review of agency action under the arbitrary and capricious standard of the Administrative Procedure Act (APA) and the Claims Court does not review under the APA. The holding of the Court of Appeals for the District of Columbia was that disappointed bidders have standing to seek equitable relief in a challenge to illegality in the procurement process. Thus, when the Senate Report stated that the substantive law and doctrine of Scanwell are still intact, it could only have meant that that holding on the District Court’s equitable jurisdiction, at the very least in post-award suits under the APA, is still valid.
Moreover, the Senate strongly suggested that “exclusive” means exclusive of contract boards when it stated that “[s]ince the court is granted jurisdiction in this area, boards of contract appeals would not possess comparable authority pursuant to the last sentence of section 8(d) of the Contract Disputes Act.” S.Rep. No. 275, supra, at 23, U.S.Code Cong. & Admin.News 1982, p. 33. This passage explains the need- — recognized by Congress — to make the Claims Court’s equitable powers exclusive of the boards. Under Section 8(d) of the CDA, agency boards are “authorized to grant any relief that would be available to a litigant asserting a contract claim in the United States Claims Court.” Thus, if Congress had not made the Claims Court’s equitable powers “exclusive” of contract boards, there would be a strong argument under Section 8(d) of *1376 the CDA that the boards would also have equitable powers.
It is not for us to question the wisdom of Congress’ allocation of equitable power between the Claims Court and the District Courts in government contract cases. Under § 1491(a)(3), the Claims Court has been granted equitable power only over implied contract actions brought prior to award. Whether the District Courts may retain equitable power over contract actions brought both before and after award, and whether that circumstance may create a dichotomy with respect to pre-award suits, is grist not for our mill.
Leaving with District Courts concurrent jurisdiction over pre-award suits would, in any event, respond to a congressional concern over forcing litigants to “travel to Washington, D.C., whenever equitable relief is sought in a contact (sic) action prior to award. Although Claims Court judges will travel, they cannot be expected to do so at extremely short notice.” H.R.Rep. No. 312, supra, at 43.
Moreover, the House Report suggests that Congress intended the grant of equitable powers to the Claims Court in (a)(3) as an interim, perhaps experimental, measure, which after a few years might be altered: “for the time being, the Committee is satisfied by clothing the Claims Court with enlarged equitable powers not to the exclusion of the district courts. The dual questions of whether these powers should even be broader and of whether they should be exclusive of the district courts will have to wait for a later date.” H.R.Rep. No. 312, supra, at 43 (emphasis added).
Thus, whatever its wisdom, Congress’ grant to the Claims Court of limited equitable relief authority in pre-award cases, whether or not concurrent with the district courts in pre-award cases, but with no affect on the pre-existing jurisdiction of the district courts in post-award cases, must be accepted and followed by this court until it is changed by the Congress.
B. Government Contentions
Citing the provision in § 1491(a)(3) for “exclusive” equitable jurisdiction in the Claims Court over pre-award cases, the government argues against the transfer, asserting that the district court is barred thereby from exercising jurisdiction in this case. As the government correctly noted in opposing the jurisdiction of the Claims Court, however, this is not a pre-award suit. Section 1491(a)(3) deals only with preaward suits and only with the powers of the Claims Court. As above indicated, we need not and do not decide, in this post-award case, whether “exclusive” was meant to preclude pre-award suits in the district court. It is for the district courts to so decide when and if pre-award suits are presented to them.[22] Whichever way they may decide that question, the grant of equitable powers to the Claims Court in preaward cases would remain unaffected. It is sufficient to support the transfer to note that § 1491(a)(3) in itself provides no barrier to jurisdiction of the district court in this post-award case.
Arguing against the transfer order, the government asks us: to disregard those portions of the legislative history (quoted above) in which the intent is stated to preserve “the ability of the parties to proceed in the district court ... in instances of illegal action”; to treat Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859 (D.C.Cir. 1970) and its progeny as no longer viable because they were assertedly designed to fill a void perceived in light of Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940) and now allegedly filled by enactment of § 1491(a)(3); to review the historical jurisdictional relationship of the Court of Claims and the district *1377 courts;[23] to hold that § 1491(a)(3) bars a post-award suit in the district court because that section involves a consent to suit and, at least impliedly, forbids relief under the Administrative Procedures Act; to consider a policy argument arising from a perceived opportunity for disappointed bidders to file a pre-award suit in the Claims Court and a post-award suit in the district court on the same facts and for the same relief after losing in the Claims Court and in this court (if § 1491(a)(3) is not read as precluding post-award suits in the district court); and to view this case as though it were somehow one for money damages against the United States (in view of a plethora of cases in which courts have disregarded an injunctive relief demand when the gravamen of the complaint was for money damages). In sum, the government argues for a holding that in enacting § 1491(a)(3) Congress intended to limit judicial relief for disappointed bidders to pre-award suits in the Claims Court and to deny all judicial relief to disappointed bidders whose complaint is filed in any court after an award has been made.[24] We find no basis for our so holding.
C. Holding on Transfer
The district court, as judge of its own jurisdiction, may decide on review of the complaint and government arguments, if any, presented to it, that it does not have jurisdiction in this post-award case, and that the ease is not therefore one that “could have been brought” as set forth in § 1631, supra, note 5. Nothing presented to us requires that we so hold, or that we vacate the transfer order on that ground.
AFFIRMED.

. This case was originally argued before a five-judge panel on November 1, 1982. On December 10, 1982 the court determined sua sponte that the issue was of such magnitude as to warrant consideration and determination by the court in banc. Argument before the court in banc occurred on February 7, 1983.

. Paragraph 10 of the Special Conditions of the Invitation For Bid No. GS-11B-18208 contains a “Listing of Subcontractors provision” designed to discourage post-award shopping for subcontractors by the successful prime contractor.

. Grimberg and Schlosser argue before us that a contract is not formed until acceptance is actually received by the successful bidder and that the Government introduced no evidence of that receipt. The argument is unavailing in view of the allegations of the complaint, in which existence of the Parker contracts is conceded.

. 28 U.S.C. § 1491(a), as amended, provides:
(1) The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.
(2) To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just. The Claims Court shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978.
(3) To afford complete relief on any contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief. In exercising this jurisdiction, the court shall give due regard to the interests of national defense and national security.

. 28 U.S.C. § 1631 provides:
Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

. Use of “jurisdiction” in subsection (a)(3) can be misleading. That subsection, like the first two sentences in subsection (a)(2), deals with the power of the court to grant a particular remedy, (a)(3) being applicable when the claim in suit is of a particular nature, i.e., “contract claim”, as distinguished from other claims listed in subsection 1491(a)(1). Because the Claims Court certainly has subject matter jurisdiction, it is more accurate to speak of (a)(3) as granting equitable power than as granting “equitable jurisdiction.” The result is the same, where as here, the court can be said to lack either “jurisdiction” or authority to exercise its equitable power, and a litigant is seeking only the exercise of that power.

. The last sentence of subsection (a)(2) deals with a “contractor” and is thus limited to suits involving an awarded contract.

. In Keco Industries, Inc. v. United States, 428 F.2d 1233, 192 Ct.Cl. 773 (Ct.Cl.1970), our predecessor the Court of Claims spelled out the standing of a disappointed bidder to sue on an implied contract to have his bid fairly and honestly considered, limited recovery to bid preparation costs, and denied a claim for lost profits, distinguishing the “contract”, which the court pointed out was not and might not have been awarded to Keco, from the implied contract claim from which standing derived. Keco had not filed a claim with the contracting officer and the court imposed no requirement for such filing.

. If Congress intended a difference in its use of “claim” in subsection (a)(3), from its use in subsections (a)(1) and (a)(2), that fact would argue for a more restrictive interpretation, for in subsection (a)(3) Congress was granting a new equitable power enabling judges of the Claims Court to interfere in the government contracting process. It should not be surprising that it would limit that interference to the pre-award stage.

. To apply In pari materia to the CDA, as Grimberg and Schlosser would have us do, without first attempting to harmonize the uses of “claim” in the portions of section 1491(a), ignores the very premise on which the canon is based. In Erlenbaugh v. U.S., supra, the Court said the rule of in pari materia “is but a logical extension of the principle that the individual sections of a single statute should be construed together .... ”

. Use of the phrase “contract claim” in subsection (a)(3) appears incongruous in relation *1369 to a claim brought before an express contract exists. It is undisputed, however, that the phrase must necessarily be interpreted as referring to a claim relating to the prospective award of a contract, i.e., to an implied contract that a contract bid will be fairly and honestly considered, or, in short-hand, to a “bid protest”.

. Grimberg and Schlosser have moved this court for an order staying all further perform-anee and the making of any further payments “under the contracts awarded” to Parker.

. Thus what Congress did speaks even more eloquently of its intent than what it said about what it was doing. Adoption of the view that § 1491(a)(3) gives the Claims Court equitable powers in cases brought to the court after a contract was awarded would in large part reinstate in contract cases the broad grant rejected by the Congress.

. As discussed infra, the wisdom of that approach is not before us. In all events, the commendable dispatch with which the Claims Court acted in the present case (three days from filing to order) would indicate that the needs of the contract system are not likely to go unmet as a result of the limited grant of equitable power at the pre-award stage to that court in subsection (a)(3).

. While the Senate and House bills were both passed during the 96th Congress, the agreed upon compromise bill was ultimately withdrawn from consideration in the Senate because of an attempt to “add a controversial nongermane amendment.” S.Rep. No. 275, 97th Cong., 1st Sess. 2 (1981).

. Nothing in the statute would, of course, impede administrative resolution of the implied contract claims of disappointed bidders, either before or after suit was brought in the Claims Court.

. Whether Congress “intended” a potential for contracting officers to escape the Claims Court, or the filing of protective suits, can never be known. (It may have viewed as safeguards against those possibilities the provisions of 41 C.F.R. l-2.407-8(b)(4)). We cannot say that Congress would not have accepted those possibilities as evils of lesser importance than those it saw in enabling Claims Court judges to interfere in post-award contract administration. In any event, it is not for us as judges to say that Congress would not have written the statute the way it did, or explained the statute as it did in the legislative history, if it knew then of the possibilities for abuse we have now “discovered”. What to some may have the face of folly may to others stand as statesmanship. We have a statute and must apply, not rewrite, it.

. Congress has not acted to deny equitable relief to those challenging in the district court an award made as a result of illegal agency action. Whatever may be said respecting the clarity of remarks in the legislative history of the Act concerning the role of the district courts, nothing anywhere in that history, or in the statute, even remotely states an intent to deprive those courts of their traditional equity powers or to transfer their pre-existing equity jurisdiction in post-award suits to the Claims Court.

. Schlosser contends the government should be estopped from relying on the award having been made before suit was filed, because the contracting officer said Schlosser would be advised before an award was made. As indicated in the text, whether a broken promise to notify means a contract was improperly or illegally awarded may be a matter for consideration by the district court in this post-award suit. The present attack on awarded contracts is outside the Claims Court’s equitable power to act in circumstances that would render a contract, if it were awarded in the future, the result of caprice. “Moreover, the Committee expects that the court will utilize the authority conferred upon it by this section only in circumstances where the contract, if awarded, would be the result of arbitrary or capricious action by the contracting officials, to deny qualified firms the opportunity to compete fairly for the procurement award.” S.Rep. No. 275, 97th Cong., 1st Sess. 23 (1981) (emphasis added), U.S.Code Cong. & Admin.News 1982, p. 33.

. Pre-award suits for injunctive relief in the district courts have faced a heavy burden. See Wheelabrator Corp. v. Chafee, 455 F.2d 1306 (D.C.Cir.1971); M. Steinthal & Co. v. Seamans, 455 F.2d 1289 (D.C.Cir.1971); A.G. Schoonmaker Co. v. Resor, 445 F.2d 726 (D.C.Cir. 1971).

. Scanwell was a post-award case, not a pre-award suit by a disappointed bidder asserting an implied contract claim. That the court required disappointed bidders to have made a protest to the contracting officer before the award was but an appropriate requirement for exhaustion of administrative remedies under the APA. The court there could have made no precedential holding respecting pre-award suits. The reference to Scanwell was occasioned by the presence of the word “exclusive” in § 1491(a)(3) and the Congress was at pains to make clear that it was not ousting the district courts of the jurisdiction exercised in Scanwell. If the Congress intended that all bid protest cases, those brought to court before and after award, be subject to equitable powers of the Claims Court, it never said so. Further, if that were so, there would be no need to have referred at all to Scanwell (other than to remark its demise) and there certainly would have been no need to say “not to the exclusion of the district courts”, supra.

. In Opal Manufacturing Co., Ltd. v. UMC Industries, Inc., 553 F.Supp. 131 (D.D.C.1982), Judge Richey, referring only to the statute, held that the Act excluded district courts from the exercise of jurisdiction in pre-award suits, and noted that district court jurisdiction is proper over post-award contract claims. In American District Telegraph v. Dep’t of Energy, 555 F.Supp. 1244 (D.D.C.1983), Judge Flannery held that the district court has jurisdiction over post-award suits.

. The government conceded that a disappointed bidder may claim bid preparation costs in the Claims Court, citing Keco Industries, Inc. v. United States, supra, note 8, and in a district court if the claim be for less than $10,000, citing 28 U.S.C. § 1346(a). Congress has not, in enacting § 1491(a)(3), removed or diminished the subject matter jurisdiction of the Claims Court, nor has it imposed thereby a time limitation on the filing of bid protest (implied contract claim) actions to obtain bid preparation costs. What it did was limit the availability of equitable relief to such actions brought before the contract is awarded. Grimberg and Schlos-ser have not here sought bid preparation costs.

. That view would foreclose judicial review entirely with respect to negotiated or “award upon bid opening” contracts, a pre-award action being impossible in those instances.