## SPACE AGE ENGINEERING, INC.

v.

## The UNITED STATES.

### No. 576–82C.

United States Claims. Court.

April 21, 1983.

David R. Flyer, Burbank, Cal., for plaintiff.

R. Anthony McCann, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant. Anthony S. Trumbly, Dept. of the Army, of counsel.

## OPINION

YOCK, Judge.

This case comes before the Court on plaintiff's complaint and application for injunctive relief and defendant's motion to dismiss and opposition to plaintiff's complaint and application.

Because this Court lacks subject matter jurisdiction over post-award applications for injunctive relief, the defendant's motion to dismiss must be granted, and the plaintiff's complaint and application dismissed.

### *Facts*

Fort Ord is a military installation of the United States Army located within the

State of California. In the fall of 1981, the maintenance and repair of equipment, previously performed by Government employees, became the subject of a Commercial Activity Review under the provisions of Office and Management and Budget Circular A–76. Under the provisions of the Circular, commercial and industrial types of activities performed by the Government are evaluated to determine whether those functions can be accomplished more economically through contracts with private industry.

Generally, the review is performed by the simultaneous preparation of an estimate of the Government's complete cost to perform the function "in-house" and the solicitation of bids from "outside" contractors. The "in-house" estimate is then compared with the bids received from private contractors, and the least-cost alternative is usually determined to be in the best interest of the Government. If the Government estimate proves to be lower than those bids received for the project, either the function continues to be performed "in-house" or, under some circumstances, a contract is awarded to the contractor in accordance with the solicitation.

On December 23, 1981, the contracting officer at Fort Ord issued Invitation for Bids No. DAKF03–81–B–0150 (later amended to No. DAKF03–82–B–0043 (IFB 0043)) inviting bids for the maintenance and repair of various general equipment. The solicitation anticipated a firm-fixed price contract beginning May 1, 1982 with two one-year options available. As written originally, the solicitation anticipated that the contractor would "furnish all personnel, management, material, equipment, parts, tools, transportation, and supplies (except as provided herein as Government furnished) and perform all general maintenance and repair * * *." The solicitation also contemplated that the contractor would utilize the Federal Supply System for those parts that had been issued National Stock Numbers (NSN's). This provision was later deleted in order to allow the contractor to procure the parts through whatever means were most expeditious.

On January 29, 1982, bids of the Government and the plaintiff, which was the sole contractor submitting a bid, were opened. A cost comparison of the plaintiff's bid and the Government estimate was conducted according to the procedures set forth in the Commercial Activities Review program, and plaintiff was determined to be the low bidder. Between the end of January 1982 and September 1982, administrative appeals of the Commercial Activity Review were processed and resolved, a pre-award survey was conducted, and final decision documentation for award of the contract was forwarded to the Department of the Army. On August 13, 1982 approval was granted. On September 1, 1982, Contract No. DAKF03–82–C–0043 (Contract 0043) was awarded to plaintiff and performance was to begin on November 1, 1982.

A pre-work conference between representatives of the Government and the plaintiff was held on September 24, 1982. A disagreement developed regarding which party would supply, and pay for, National Stock Number parts. Because of this disagreement, the Government recomputed the cost comparison between the plaintiff's bid and the Government estimate. The Government then determined that the Government estimate was lower than the plaintiff's bid, although the plaintiff disputes this finding. Based upon this new cost comparison, however, the contract was terminated for convenience effective September 30, 1982. The plaintiff disagreed with this decision.

On October 6, 1982, the plaintiff filed a complaint in the United States District Court for the Central District of California alleging improper termination of the contract award and requesting injunctive relief. The complaint was dismissed *sua sponte* by the District Court on October 8, 1982. On November 12, 1982, the plaintiff filed a complaint in this Court requesting the Court to restrain the defendant from terminating the contract or cancelling the bids after bid opening. On November 26, 1982, the defendant filed its motion to dismiss on the grounds of lack of subject matter jurisdiction.

**264**

### Discussion

■ This Court lacks jurisdiction to address claims for injunctive relief in cases brought after a contract has been awarded. *United States v. Grimberg,* 702 F.2d 1362 (C.A.Fed.1983); *see also F. Alderete General Contractors, Inc. v. United States,* 2 Cl.Ct. 184, at 185 (Cl.Ct.1983) (MEROW, J.); *Big Bud Tractors, Inc. v. United States,* 2 Cl.Ct. 195, at 196 (Cl.Ct.1983) (KOZINSKI, C.J.). The "exercise of equitable power granted the Claims Court in 28 U.S.C. § 1491(a)(3) (amended 1982) is limited to cases in which complaints are filed in the Claims Court before the involved contracts have been awarded * * *." *Grimberg, supra,* at 1374. In the present case, the contract was awarded to the plaintiff on September 1, 1982. It was not until November 12, 1982, that the plaintiff sought its equitable relief in this Court. Thus, the plaintiff's claim for relief is clearly post-award, and consequently the Court lacks jurisdiction over this case.

The plaintiff also argues that although the contract was awarded before the suit was commenced, the contract was terminated for pre-award reasons (*i.e.,* cost comparison is a pre-award activity). Therefore, the plaintiff contends that the dispute should be considered pre-award. This contention is without merit. The *Grimberg* decision clearly indicates that the Claims Court's equitable power should be construed narrowly:

[T]he legislative history [of the Federal Court's Improvement Act] makes eminently plain that Congress intended to limit exercise of the Claims Court's equitable powers to contract claims brought to the court before the contract is awarded. In essence, Congress intended to limit exercise of equitable powers by the Claims Court to the pre-award stage * *, and to avoid the exercise of those powers by that court in the post-award, administration stage * * *.

*Grimberg, supra,* at 1369. Following plaintiff's logic would serve to undermine the intent of Congress that the Court's jurisdiction be limited to pre-award disputes because any disappointed contractor could invoke the Court's jurisdiction by claiming that a post-award dispute was based on pre-award difficulties. The Court's jurisdiction is limited specifically to claims brought before a contract is awarded, and plaintiff's attempt to circumvent this requirement must consequently fail.

### Conclusion

For the foregoing reasons, defendant's motion to dismiss is granted, and plaintiff's complaint and application for injunctive relief is to be dismissed without prejudice to renewal in an appropriate forum.