**INDIAN WELLS VALLEY METAL TRADES COUNCIL; International Association of Machinists and Aerospace Workers, Local Lodge 442**

v.

**The UNITED STATES.**

No. 578–82C.

United States Claims Court.

Nov. 24, 1982.

Robert M. Simpson, Los Angeles, Cal., attorney of record, for plaintiff. Rose, Klein & Marias, Los Angeles, Cal., of counsel.

Thomas W.B. Porter, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath. Joseph P. Duenas, Office of Gen. Counsel, Dept. of the Navy, Washington, D.C., of counsel.

## OPINION

WIESE, Judge:

Plaintiffs are unincorporated labor organizations representing federal workers employed at the Naval Weapons Center, China Lake, California. Their complaint, which has been transferred here from the District Court for the Northern District of California,[1] seeks temporary and permanent injunctive relief enjoining the United States Navy from contracting out certain work to Pan Am World Services, Inc. ("Pan Am"). The complaint alleges that the cost evaluation favoring the decision to contract with Pan Am (in lieu of retaining the work "in house") was arbitrary and capricious in that it failed to fully and accurately apply the comparative cost criteria required under Office of Management and Budget (OMB) Circular No. A–76 (commonly called the "Cost Comparison Handbook"), and various supplements thereto. The Government has moved to dismiss the complaint on the grounds that: (i) the court lacks subject matter jurisdiction, (ii) plaintiffs lack standing to bring the suit, and, (iii) the administrative determination is not judicially reviewable. On the basis of the parties'

---

1. Transfer of the case to this court was based upon the district court's determination that it lacked subject matter jurisdiction under 28 U.S.C. § 1491(a)(3).

briefs and the arguments presented in connection therewith,[2] the court concludes that it is without jurisdiction in the matter.

## FACTS[3]

On or about March 15, 1982, the Naval Facilities Engineering Command issued a solicitation for bids for a commercial activities contract involving housing maintenance, transportation and supply services to be performed at the Naval Weapons Center at China Lake, California. Concurrent with this contracting procedure (and as a part thereof), the Navy undertook a study to determine the costs to the Government of retaining the in-house capability for the performance of the same commercial activities. Upon later comparative evaluation, it was concluded that the work in question could be performed in-house for approximately $3,000,000 less than the cost of performance by an outside contractor. Based on this conclusion, the affected federal employees (plaintiffs being among these) were advised that a recommendation had been made favoring the in-house retention of the work contemplated by the commercial activities contract.

On July 14, 1982, Pan Am (a bidder in the solicitation) filed a written administrative appeal to the Western Division, Naval Facilities Engineering Command, claiming that the cost data which the Government had developed lacked credibility because it ignored certain identifiable cost factors. The Naval Weapons Center submitted a point-for-point response to the discrepancies and deficiencies claimed by Pan Am; thereupon, the matter was assigned to a "Commercial Activities Appeal Reviewing Official" for consideration. The upshot was a decision in favor of Pan Am, namely, a conclusion that performance under contract would be more economical than continued in-house performance by a margin of $364,-000. It was directed that the contract award be made.

Again an appeal followed—this time by the federal employees. The ruling on this appeal resulted in two minor modifications in favor of retaining the work in-house. However, in the overall, the result remained the same—the cost differential, though now reduced to $275,000, still favored the award to Pan Am. There being no further right to pursue the matter administratively, plaintiffs sought injunctive relief in court.

## DISCUSSION

The threshold question in this case is whether a non-bidding party, threatened with economic injury from the intended award of a government contract, is entitled to seek injunctive relief here to arrest that award.

The starting point for analysis is the statutory language. Title 28 of the United States Code, section 1491(a)(3), as recently amended by the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, § 133(a), 96 Stat. 25, 39–40, sets forth this court's equitable jurisdiction in these words:

> To afford complete relief on any contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief. * * *

In terms of the present problem, the significant language rests in the introductory clause: "[t]o afford complete relief on any contract claim brought before the contract is awarded". Two essential concerns inhere in this language. The words express at once Congress' recognition of the limited authority heretofore available to this forum to redress injurious procurement actions as-

---

2. The case, which was transferred here on November 15, 1982, involves an intended contract award date of November 30, 1982. In the interest of economy and for the sake of expediting proceedings, it was agreed that a hearing on the merits of the action would be postponed pending simultaneous briefing of the Government's jurisdictional defenses (supplemented by a post-briefing telephone conference) and the court's decision on those defenses.

3. The facts recited here have been taken from the complaint and supporting exhibits; hence, they do not stand as final adjudications of fact so far as any later trial proceedings may be concerned.

sociated with a contract award and the intention to augment that authority—confined, however, to the same class of suits, namely, "contract actions". In a word, the court's grant of equitable jurisdiction was bound to those same cases—the so-called "bid protest actions"—which, but for the enlargement of its powers, might otherwise have been actionable here as claims for money damages, *i.e.*, bid preparation costs. *Keco Industries, Inc. v. United States,* 192 Ct.Cl. 773, 428 F.2d 1233 (1970); *Heyer Products Company, Inc. v. United States,* 135 Ct.Cl. 63, 140 F.Supp. 409 (1956). The legislative history stands foursquare with this reading of the statute.[4]

■ Plaintiffs' suit does not fit with the intentions of the statute. Theirs is not a "contract claim". They were not bidders in the procurement that affects them; hence they cannot claim that "special relationship" upon which an implied contractual relationship is premised, *see Control Data Corp. v. Baldrige,* 655 F.2d 283, 293 (D.C. Cir.), *cert. denied,* 454 U.S. 881, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981), and upon which our jurisdiction in bid protest actions depends. *Heyer Products Company, Inc. v. United States, supra,* 135 Ct.Cl. 63, 70, 140 F.Supp. 409, 413 (1956).

Undeniably, the economic injury they foresee is tied directly to an allegedly unlawful implementation of procurement guidelines and in that sense they share the same concerns urged by disappointed bidders. But the mere existence of contract-related issues cannot convert their action to one based upon a contract.[5] To rule otherwise—to ignore the requirement for a contractual relationship—could readily place this court in the posture of attending to demands for injunctive relief in jurisdictional areas that are within the exclusive province of the district courts. It is certain that Congress did not intend to so broaden our jurisdiction. Absent the presentation of a complaint for injunctive relief brought by a party asserting an actual or prospective contractual relationship with the United States, no equitable relief may be granted by this court.

■ The fact that the Government argued in favor of our jurisdiction before the district court cannot change this result. "[L]ack of federal jurisdiction cannot be waived or be overcome by an agreement of the parties." *Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934). Neither may it be supplied by estoppel. Jurisdiction is determined by Congress; not the actions of counsel. Plaintiffs' suit rests on grounds independent of contract; hence, their remedy—if they have one at all—lies in the district court under the appropriate sections of the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1976).

---

4. The Report of the House Committee on the Judiciary, H.R.Rep. No. 312, 97th Cong., 1st Sess. (1981), defines the Claims Court's authority in terms of "cases that either come within the jurisdictional authority of the Tucker Act or that Congress specifically has authorized the court to determine" (*Id.* at 24) and in that context, goes on to describe the new grant of equitable authority as "modestly increasing the powers of the Claims Court * * *." (*Id.* at 43.) The same point appears even more explicitly in the Report of the Senate Judiciary Committee, S.Rep. No. 275, 97th Cong., 1st Sess. reprinted in U.S.Code Cong. & Admin.News 1982, p. 11; "[S]ection 133 gives the new Claims Court the power to grant declaratory judgments and give equitable relief in controversies *within its jurisdiction*". (*Id.* at 22, U.S.Code Cong. & Admin.News 1982, p. 32 (emphasis added.))

5. An analogous jurisdictional issue to that raised here was presented in *Megapulse, Inc. v. Lewis,* 672 F.2d 959 (D.C.Cir.1982). There the district court had declined to entertain a suit for injunctive relief against the United States (to restrain the disclosure of certain technical data) on the ground that the issues were contract related and therefore fell within the exclusive province of this court. In reversing this dismissal for lack of jurisdiction, the appellate court pointed out that, while heed had to be taken to avoid suits under the Administrative Procedure Act that were but Tucker Act suits in disguise, nevertheless, the mere existence of contract-related issues did not convert every such action to one based on a contract. "[R]ational distinctions between actions sounding genuinely in contract and those based on truly independent legal grounds", *Megapulse, Inc. v. Lewis, supra,* 672 F.2d at 969–70, remain within the court's power to draw. Here, as in *Megapulse,* plaintiffs' suit has contract overtones but it does not seek the enforcement of rights or expectations bottomed on a contract.

## CONCLUSION

For the reasons stated, the Government's motion to dismiss the complaint is granted.