OMEGA WORLD TRAVEL, INC., et
al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 160–86C.

United States Claims Court.

March 24, 1986.

Barry Roberts, Washington, D.C., for
plaintiffs.

David Stinson, Washington, D.C., with
whom was Asst. Atty. Gen. Richard K.
Willard, for defendant.

OPINION

REGINALD W. GIBSON, Judge:

This case comes before the court on
plaintiffs' Complaint for Declaratory and
Injunctive Relief, and an Application for
Preliminary Injunction filed on March 10,

1986. Contemporaneously therewith, plaintiffs also filed in support thereof a Memorandum in Support of Preliminary Injunction with attachments. It is averred that subject case arises under the Competition In Contracting Act of 1984, Pub.L. No. 98–369, Title VII, 98 Stat. 1175 (1984), 10 U.S.C. § 2301, *et seq.* (1982 & Supp. II), and that jurisdiction is bottomed on the Federal Courts Improvement Act of 1982 as set forth in 28 U.S.C. § 1491(a)(3) (1982).[1]

Plaintiffs seek a declaratory judgment to the effect that the execution of certain agreements between the agencies involved and SATO Inc., to provide travel management services, is the award of a procurement contract subject to the Competition In Contracting Act, *supra.* Additionally, they seek injunctive relief (preliminary and permanent) prohibiting the award of contracts by the involved agencies for travel management services without first obtaining and fairly evaluating competitive proposals as required by procurement law.

A hearing was held on March 11, 1986, and it was determined that no temporary restraining order was filed apparently because the award of an injurious contract was not imminent. Because counsel for the defendant advised on the record that the involved agencies will agree to abstain from awarding a travel management service contract at least until after April 1, 1986, the court took under advisement the propriety of scheduling a hearing on plaintiffs' motion for preliminary injunction. The court also deferred the hearing on the application for a preliminary injunction inasmuch as the defendant contends that this case is improperly here. That is to say, in view of the limited grant of 28 U.S.C. § 1491(a)(3), this court is without jurisdiction to grant the equitable relief sought.[2] Prior to the filing of any motion to dismiss, however, on March 12, 1986, plaintiffs moved for a transfer of this case to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1631 (1982).[3] Subsequently, on March 14, 1986, defendant moved to dismiss.

The threshold issue which this court must address regarding *either* motion before the court is—whether plaintiffs' petition seeking equitable and declaratory relief is an action here under a "contract claim," as contemplated in § 1491(a)(3), even though a solicitation (IFB) has not issued from any agency, no plaintiffs (and/or contractors) have proffered any bids, and as a consequence no implied-in-fact contracts have been established. If not, to the extent plaintiffs' petition "could have been brought" in the United States District Court, we are obliged by statute to grant plaintiffs' motion to transfer "if it is in the interest of justice." *Id.,* § 1631.

## FACTS

There are four plaintiffs seeking equitable relief in this case. Omega World Travel, Inc. and Beatty Family Corporation d/b/a Travelwise are Virginia and Oregon corporations, respectively, engaged in business as travel agencies providing travel management services to various agencies of the United States pursuant to contracts

1. The U.S. Claims Court shall have jurisdiction "[t]o afford complete relief on any contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief."

2. Defendant concluded that it would proceed by filing a motion to dismiss on or before March 14, 1986, and plaintiffs were allowed to March 28 in which to file their opposition.

3. 28 U.S.C. § 1631 provides:

Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court *and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action* or appeal *to any other such court in which the action* or appeal *could have been brought* at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

(emphasis added).

awarded following competitive bidding. Both seek the opportunity to bid on additional contracts with a purpose of providing travel management services to other agencies of the U.S. Government. Omega has requested an opportunity to bid on Department of Defense and NASA travel management contracts and Travelwise has sought to bid on solicitations to provide travel services to various components of the Department of Defense in Oregon and elsewhere.

The Society Of Travel Agents In Government, Inc. (STAG) and the Association Of Retail Travel Agents, Ltd. (ARTA) are both non-profit trade associations organized under the laws of the District of Columbia. STAG's and ARTA's membership consists of travel agents who also provide or seek to provide travel services to government agencies under competitive bidding. The majority of STAG's and ARTA's members are "small businesses" within the meaning of the Competition In Contracting Act, 10 U.S.C. § 2301(c) and ARTA represents approximately 3,500 travel agents and agencies throughout the United States. Both STAG and ARTA bring this action on behalf of their members.

The genesis of the perceived problem stems from the fact that for many years the Department of Defense (DOD) and NASA procured travel management services from Scheduled Airline Traffic Offices (SATOs), a joint venture composed of certain domestic airlines, pursuant to grants of anti-trust immunity from the Civil Aeronautics Board (CAB). Under this system, SATO provided travel management services to components of the DOD and NASA pursuant to Memoranda of Understanding (MOU), which were approved and granted anti-trust immunity by the CAB. Said MOUs were entered into by SATO with such agencies without competitive bidding at a point in time when General Accounting Office (GAO) regulations *prohibited* the use of commercial travel agencies, such as plaintiffs, to secure official government travel. That is to say, said MOUs were entered into prior to the enactment of the Competition In Contracting Act of 1984. However, on or about April 25, 1984, the

GAO published a final rule making, 49 Fed. Reg. § 17721 (1981), amending 4 C.F.R. Part 52, Uniform Standards and Procedures for Transportation Transactions— Use of Travel Agencies, to remove the pre-existing prohibition on the use of commercial travel agencies to provide official government travel.

In view of the foregoing, since April 25, 1984, the General Services Administration (GSA) has awarded numerous contracts for travel management services on a competitive basis. Additionally, the DOD has since awarded a small number of travel management service contracts on a competitive basis. However, DOD and NASA have refused to seek competitive bids for travel management services at any location served by SATO in spite of the fact that numerous new SATOs have been opened since the GAO ruling of April 25, 1984, to serve DOD and NASA installations. At none of these locations has competitive procedures been followed. This situation obtains notwithstanding the fact that SATOs and commercial travel agencies provide substantially similar services including air reservations and ticketing, hotel reservations, and automobile rental. Furthermore, the GAO has found that such services should be obtained in accordance with competitive procedures and are subject to applicable procurement laws. *Matter of TV Travel, et al.*, Request for Reconsideration, B–218198.6 *et al.*, 85–2 C.P.D. (Fed.Pub.) ¶ 640 (1985).

On or about October 4, 1985, the Department of Transportation (DOT) (successor to CAB) issued a final order in *Scheduled Airlines Traffic Offices Agreements Show Cause Proceeding*, Docket No. 41416, Ord. No. 86–1–62 (1986), terminating the anti-trust immunity for the SATO agreements under MOUs after January 31, 1986. Subsequent to the order date, the latter date was extended to April 30, 1986. Thus, upon the vitiation of the anti-trust immunity, all of the SATO agreements and MOUs expire concomitantly.

**626**

In view of the foregoing, various air carriers have founded a new Delaware Corporation, *i.e.*, SATO Inc., to provide travel management services to DOD and NASA instead of existing SATOs following termination of anti-trust immunity. In short, SATO Inc. in actuality continues to be nothing more than an alter ego of its predecessor, *i.e.*, a commercial travel agency owned by various airlines.

Against this background, and notwithstanding the foregoing impediments, certain elements of DOD and NASA have ventilated their intention to continue to procure their travel management services from SATO Inc., without seeking competitive bids. Because the continued procurement of services from SATO Inc. will constitute a new procurement, which contracts have not yet been awarded, and if carried out will be non-competitive, it is for these reasons that plaintiffs seek equitable relief in this court.

*Relief Sought*

Plaintiffs, for the foregoing reasons, seek the following equitable relief:

(i) *Declaratory Judgment*—a holding that the execution of a MOU between SATO Inc. and any agency or department of the United States Government to provide travel management services is the award of a procurement contract subject to the Competition In Contracting Act of 1984; and that absent competitive procedures, such an award is unlawful; and

(ii) *A Preliminary (and Permanent Injunction)*—prohibiting the award of contracts by any component of the DOD and/or NASA for travel management services without first obtaining and fairly evaluating competitive proposals consistent with applicable procurement law.

■ Plaintiffs, without abandoning their claims detailed *supra*, have also moved for transfer on the ground that this case is one which could have been brought in the United States District Court. Defendant counters plaintiffs' requests for equitable relief with a direct challenge to this court's subject matter jurisdiction by its Motion To Dismiss.[4] The substance of defendant's position is that this court is without jurisdiction inasmuch as plaintiffs have not shown that it was a *"bidder"* to any agency IFB so as to create an implied-in-fact contract upon which they could assert a § 1491(a)(3) "contract claim." Defendant also contests plaintiffs' motion to transfer.

## DISCUSSION

■ As stated *supra*, the threshold question for resolving plaintiffs' motion to transfer, as it is obviously relative to defendant's motion to dismiss, is whether this court possesses subject matter jurisdiction over plaintiffs' petition. As stated in 28 U.S.C. § 1631, transfer is potentially available as an option whenever "the court finds that there is a want of jurisdiction...." *Id.* As distinct from a pure motion to dismiss, however, in considering a motion to transfer, there are two additional conditions which must be fulfilled. First, to grant a transfer, as opposed to a pure dismissal, it must be "in the interest of

---

**4.** As a R.U.S.C.C. 12(b)(1) motion for lack of subject matter jurisdiction, we find defendant's jurisdictional attack to be factual in nature, *i.e.*, the defendant avers that plaintiffs offered no bids to any solicitations, thus no implied contract arose. However, in such an attack on jurisdiction, we need not consider all of plaintiffs' allegations to be true as necessarily would be the case in a R.U.S.C.C. 56 motion. *Cf. Mortensen v. First Federal Savings and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977); *Williamson v. Tucker,* 645 F.2d 404 (5th Cir.1981). Rather, we are obliged to look beyond the pleadings and decide for ourselves those facts, even if in dispute, which are necessary for a determination of the jurisdictional merits of defendant's

motion. We are constrained to so proceed because "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Cf. Mortensen,* 549 F.2d at 891; *Williamson,* 645 F.2d at 404; *De Lancie v. Birr, Wilson Co.,* 648 F.2d 1255, 1258 (9th Cir.1981); *Eaton v. Dorchester Development, Inc.,* 692 F.2d 727 (11th Cir.1982); *Exchange Nat. Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126 (2d Cir.1976); *Prakash v. American University, et al.,* 727 F.2d 1174, 1179 (D.C.Cir.1984); *Grafon Corp. v. Hausermann,* 602 F.2d 781 (7th Cir.1979). *See also, McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 185, 189, 56 S.Ct. 780, 783, 785, 80 L.Ed. 1135 (1936).

justice ..." to do so. *Id.* Second, the petition must state a cause of action which "could have been brought" in the court to which transfer is sought, in this case the United States District Court for the District of Columbia. *Id.*

■ We begin our analysis of the threshold jurisdictional question with the observation that the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25, 40 (1982), codified at 28 U.S.C. § 1491(a)(3) (1982) is the genesis of this court's injunctive authority over pre-award contract cases. Section 1491(a)(3) limits the court's equitable, *i.e.,* injunctive, authority to "contract claim[s] brought before the contract is awarded." That is to say, our equitable jurisdiction can only be invoked when there is a breach of the implied contract to fairly and honestly consider all responsive bids. *United States v. Grimberg,* 702 F.2d 1362, 1367 (Fed.Cir.1983); *Ingersoll-Rand Co. v. United States,* 2 Cl.Ct. 373, 375 (1983). Moreover, it is settled in this court that Congress' waiver of sovereign immunity in § 1491(a)(3) is to be strictly construed and may not be expanded by implication. *International Graphics, Division of Moore Business Forms, Inc. v. United States,* 4 Cl.Ct. 186, 192 (1983); *Speco Corp. v. United States,* 2 Cl.Ct. 335, 336–37 (1983); *see also United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976).

■ Defendant's motion to dismiss is premised on the contention that this court lacks subject matter jurisdiction to grant the requested equitable relief because the complaint does not state a "contract claim" as envisioned by § 1491(a)(3). The esoterical phrase—"*contract claim* brought before the contract is awarded"—contains a reference to two separate and distinct contracts. It is only one of those referenced contracts that forms the predicate for this court's equity jurisdiction. It is not the "contract [that] is awarded," *i.e.,* for goods and/or services. That is so because at the *pre-award* stage, that contract is not, at that posture, in existence and consequently cannot form the basis for a contract claim,

a prerequisite to this court's threshold jurisdiction. *Grimberg,* 702 F.2d at 1367 & n. 8. Given the foregoing, then it can only be the first contract, *i.e.,* the "contract claim" referenced in § 1491(a)(3) which is the indispensable predicate for this court's threshold jurisdiction. That contract claim is a § 1491(a)(1) implied-in-fact contract between the contractor-bidder and the governmental agency. *See Keco Industries, Inc. v. United States,* 428 F.2d 1233, 192 Ct.Cl. 773 (1970); *Heyer Products Co. v. United States,* 140 F.Supp. 409, 135 Ct.Cl. 63 (1956). It is a justiciable contract emanating from the procurement process where there has been a solicitation disseminated by the procuring agency and a resulting responsive bid/offer proffered by the contractor. Implicit in this process is the implied contractual promise by the government that the bids will be fully and fairly considered. And the jurisdictional basis for the exercise of the equitable powers of this court stems directly from this § 1491(a)(1) implied contract with the United States. Such jurisdiction cannot attach here, therefore, if that implied contractual relationship is wanting. For an implied-in-fact contract to be created, there must, of course, be not only an offer, acceptance, and consideration, but also a mutual intent to contract by the parties. *Russell Corp. v. United States,* 537 F.2d 474, 482, 210 Ct.Cl. 596 (1976), *cert. denied,* 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791 (1977).

■ In the case at bar, none of the plaintiffs aver that they are bidders, responsive or otherwise, to a duly disseminated solicitation by any agency of the defendant. Since that is so, and we so find, the requisite conduct between the parties has not occurred so as to establish that relationship of an implied-in-fact contract upon which a "contract claim" for equitable relief may be prosecuted in this court.

In *Indian Wells Valley Metal Trades Council v. United States,* 553 F.Supp. 397, 1 Cl.Ct. 43 (1982), the court addressed the same issue postured here—whether a nonbidding party, threatened with economic injury from the intended award of a govern-

ment contract, is entitled to seek injunctive relief to arrest that award. In holding that the plaintiff's suit there rested on grounds independent of contract, and their remedy, if any existed, would lie in the United States District Court, the court held that:

> Theirs is not a "contract claim". They were not bidders in the procurement that affects them; hence they cannot claim that "special relationship" upon which an implied contractual relationship is premised [citations omitted] and upon which our jurisdiction in bid protest actions depends.

*Id.*, 1 Cl.Ct. at 45, 553 F.Supp. 398–99. *See also Systems Architects, Inc. v. United States,* 2 Cl.Ct. 456, 463 (1983) (where plaintiff is also a non-bidder and the court stated, "this is not a case that is otherwise in this court's jurisdiction as to which section 1491(a)(3) enables complete relief to be afforded by way of injunction."); *Hero Inc. v. United States,* 3 Cl.Ct. 413, 416 (1983) ("there is no jurisdiction over a suit for equitable relief under 28 U.S.C. § 1491(a)(3) by a *non-bidder* in connection with a proposed government procurement.") (emphasis added).

It is clear beyond cavil, therefore, that by § 1491(a)(3) Congress waived sovereign immunity and made an equitable remedy available in this court only under the limited circumstances when it is established that a claim over which this court has jurisdiction, *i.e.,* an implied-in-fact contract under § 1491(a)(1), is filed here before a contract has been awarded. *Grimberg,* 702 F.2d at 1371–72. Here, in the case at hand, not only have plaintiffs failed to establish that they were bidders to a particular solicitation, but they have also failed to establish that there is *outstanding* a specific viable solicitation by a government agency with respect to which they have been denied the right to participate in the competitive process. Because the courts refused to find jurisdiction on the facts in *Indian Wells Valley, Systems Architects, Inc.;* and *Hero Inc., a fortiori,* jurisdiction is clearly wanting in the case at bar—and we so find.

■ Having established that this court lacks subject matter jurisdiction over plaintiffs' claim, some form of "dismissal" is unquestionably the appropriate remedy. Whether this court's action will take the form of a *de jure* dismissal or a transfer to the United States District Court, as plaintiffs have requested, however, turns on the further resolution of those two additional factors outlined *supra, i.e.,* (1) is plaintiffs' cause of action one which could have been brought *at first instance* in the United States District Court for the District of Columbia; and (2) would said transfer be in the interest of justice. For the following reasons, we believe it is appropriate that this case be transferred to the United States District Court for the District of Columbia.

Statutorily, we are obliged to consider the foregoing factors and begin, in addressing the initial factor, by observing that the one tangible benefit plaintiffs receive through transfer is the relation back of their filing date in the District Court to the date of filing in this court. Without expressing any opinion as to the outcome of the case, we believe that inasmuch as plaintiffs have sought injunctive relief from the date of filing here, March 10, 1986, should there be cause for the District Court to grant plaintiffs' relief prospectively from the date of filing, it is clearly in the interest of justice that plaintiffs receive the benefit of their diligence in pursuing their claim as of that date.

Finally, while the District Court is the initial arbiter of its own jurisdiction, it appears that the power conferred on that court pursuant to 28 U.S.C. §§ 1331 and 2201 (1982) provides ample authority for an adjudication of the merits of the instant plaintiffs' petition. On the other hand, defendant contends that this is a pre-award contract case and therefore has objected to a finding that subject case "could have been brought" in the District Court citing the District Court for the District of Columbia's decision in *Opal Manufacturing Co. v. United States Postal Service,* 553

F.Supp. 131, 133 (D.D.C.1982). In that case, the court stated:

the Federal Courts Improvement Act must be read to vest jurisdiction in the Claims Court for pre-award contract claims, *to the exclusion of this Court.* To the extent that this case presents such claims, jurisdiction in this Court is lacking.

*Opal*, 553 F.Supp. at 133 (emphasis added). *This* court has just determined that plaintiffs' cause of action is *not* a *"pre-award* contract claim" seeking injunctive relief, thus *Opal Manufacturing* cited to by defendant is inapposite. We decline, therefore, to permit plaintiffs to be thrusted into the "Catch–22" scenario defendant has so artfully constructed. Quite simply, because plaintiffs may have mischaracterized their claim as one for *pre-award* relief, that fact does not unalterably etch that mistake in granite. Plaintiffs' substantive thrust is simply to force DOD and NASA to comply with the laws of the United States—a cause of action for which an equitable remedy might be deemed appropriate.

### CONCLUSION

Based on the foregoing, the court hereby grants plaintiffs' motion for transfer to the United States District Court for the District of Columbia. Defendant's motion to dismiss is denied as moot. Costs shall be assessed against the plaintiffs.

IT IS SO ORDERED.