**INNOVATIVE RESOURCES, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 04–1533C.**

United States Court of Federal Claims.

Dec. 17, 2004.

Joseph A. Camardo, Jr., Auburn, New York, attorney of record for plaintiff.

Thomas D. Dinackus, Washington, D.C., with whom was Assistant Attorney General Peter D. Keisler, for defendant.

## OPINION

REGINALD W. GIBSON, Senior Judge.

### I. INTRODUCTION

Before this court is defendant's November 5, 2004 Motion to Dismiss for lack of subject matter jurisdiction, pursuant to RCFC 12(b)(1). Defendant filed this motion in response to a pre-award bid protest filed by plaintiff Innovative Resources on October 8, 2004. Plaintiff filed said protest upon learning that it would not be awarded a contract for janitorial and grounds maintenance services at a San Bruno, California General Services Administration ("GSA") warehouse. The prospective contract is to be awarded as a sole source contract pursuant to Section 8(a) of the Small Business Act, 15 U.S.C. § 637(a). Innovative Resources is an eligible Section 8(a) participant, as is Bay Area Carpet & Maintenance Services ("Bay Area")—the proposed awardee of the contract. As we explain in detail *infra*, we find that plaintiff, Innovative Resources, lacks standing to bring this bid protest. It necessarily follows, then, that this court lacks the requisite jurisdictional basis to entertain this matter. Consequently, we are constrained to GRANT the defendant's motion to dismiss, and hereby DISMISS this bid protest pursuant to RCFC 12(b)(1).

### II. FACTUAL BACKGROUND

At the time this action was filed in this court on October 8, 2004, two service contracts were about to expire. The first such contract was for janitorial services at the GSA National Archives and Federal Warehouse Buildings located in San Bruno, California. Said contract expired on October 31, 2004. The second contract concerned the grounds maintenance for the same buildings; the grounds maintenance contract expired on November 30, 2004. Prior to their expiration, both contracts were performed by Neals Janitorial Service.

Neals Janitorial Service qualified as a small, disadvantaged business eligible to participate in the Small Business Administration's ("SBA's") Section 8(a) program, 15 U.S.C. § 637(a), when the now-expired con-

tracts were executed. Since that time, however, Neals Janitorial Service has graduated from the Section 8(a) program.[1] As the value of each of the two contracts is less than $3,000,000.00, the contracts were again determined to be a Section 8(a) set-aside contract, and designated for sole source Section 8(a) procurement, pursuant to 48 C.F.R. § 19.805–1. Thus, GSA would enter into a contract with the Small Business Administration, who would in turn *subcontract* with an eligible Section 8(a) business concern.

Prior to the expiration of Neals' contracts, Innovative Resources engaged in "an informal mentor/protege-type relationship" with Neals, and thereby worked with both San Bruno contracts, *supra.* Compl. 2. Additionally, Innovative Resources contacted the GSA Contracting Officer, Mr. Paul Rosen, as early as October 17, 2003, and indicated that Innovative Resources would appreciate being considered for the purpose of providing services at San Bruno.

On June 18, 2004, SBA Business Opportunity Specialist Carol Farrant of the San Francisco, California SBA Office, informed GSA by letter that it wished to enter into a contract for janitorial services at San Bruno with GSA on behalf of Bay Area, pursuant to Section 8(a). Three days later, on June 21, 2004, SBA Business Opportunity Specialist Cynthia Marymee, also of the San Francisco, California SBA Office, sent a similar letter on behalf of Innovative Resources. Ms. Marymee sent a second letter on June 21, 2004, that was identical in all respects to her first letter, except that it referenced the "grounds

maintenance" contract.[2] As of July 7, 2004, both Business Opportunity Specialists knew that they had each recommended a Section 8(a) firm to GSA for the San Bruno service contracts. AR 19.

In response, the GSA Contracting Officer selected Bay Area as the Section 8(a) concern that it wished to have perform the janitorial and grounds maintenance services at its San Bruno facility, in spite of Innovative Resources' "protege" experience and expressed desire to perform the contract.[3] The SBA communicated its acceptance of GSA's offer to contract on behalf of Bay Area by letter dated August 3, 2004. Thereafter, on August 23, 2004, the Contracting Officer formalized his decline of Innovative Resources, stating that it selected Bay Area both because GSA received the SBA's letter on behalf of Bay Area first, and also that Bay Area had more experience than Innovative Resources.[4]

Upon learning that Innovative Resources had not been selected to perform the San Bruno contract, plaintiff filed a complaint with this court on October 8, 2004, styled as a pre-award bid protest. Thereafter, on November 5, 2004, defendant filed the instant motion to dismiss the bid protest pursuant to RCFC 12(b)(1), alleging that this court lacks the requisite subject matter jurisdiction to resolve this dispute.

### III. JURISDICTION

At the outset of our discussion of jurisdiction, we note that plaintiff's complaint merely asserts that "this Court has jurisdiction of

1. Small business concerns are eligible to participate in the Section 8(a) program for a maximum period of 9 years. 13 U.S.C. § 124.2. After such time, a participant graduates from the program and is no longer eligible for contract awards under the Section 8(a) program. *Id.*

2. Review of the Administrative Record makes it clear that GSA decided to combine the contracts for janitorial and grounds maintenance into a single contract. *See, e.g.,* AR 27. The date on which this decision was made, however, is not evident from the Administrative Record before this court.

3. Again, the Administrative Record is not clear on when the Contracting Officer communicated its selection of Bay Area to the SBA. Since,

however, the SBA accepted GSA's offer to contract on behalf of Bay Area on August 3, 2004, we must conclude that GSA communicated its choice to the SBA on or before August 3, 2004. AR 27.

4. The government took corrective action with respect to the proposed award to Bay Area, as the Contracting Officer determined that basing a portion of his decision on the arrival of the offer letters from the SBA was improper. On October 21, 2004, the Contracting Officer rescinded his earlier decision, and simultaneously reissued a corrected decision by memorandum. Said memorandum stated that the Contracting Officer based his decision solely on the relative experience and capabilities of the two Section 8(a) business concerns.

this action under 28 U.S.C. § 1491[, i.e., the Tucker Act]. The instant action is founded upon Acts of Congress, regulations of an agency of the Executive Branch of government, and an implied contract with the United States." Compl. 1. Because the plaintiff concedes that no contract has been executed with regard to the janitorial/grounds maintenance services for GSA's San Bruno facility, and plaintiff seeks injunctive relief,[5] it is clear that plaintiff intends to premise jurisdiction upon 28 U.S.C. § 1491(b)(1).[6] Said statute grants the United States Court of Federal Claims jurisdiction to hear preaward bid protest claims of "interested parties," and allows us to "award any relief that the court [deems just and] proper, including [but not limited to] declaratory and injunctive relief." 28 U.S.C. § 1491(b)(2).

The government presents two arguments for its challenge to subject matter jurisdiction,[7] both of which relate to defendant's claim that plaintiff lacks standing as an interested party.[8] First, the government contends that Innovative Resources is not an interested party because the government has not issued a solicitation for the subject contract, and also Innovative Resources has not submitted a bid. Second, the government alleges that "any contract that might come into existence here would be between the GSA and SBA, and IR could only be involved as a subcontractor to the SBA. A subcontractor does not qualify as an 'interested party.'" D's Mot. to Dismiss at 7. We shall address each of these arguments, and plaintiff's responses thereto, in turn.

**5.** Among its enumerated demands for relief, plaintiff requests that "the Court issue an order directing the Defendant to award the sole source [Section] 8(a) contract to plaintiff." Compl. 5. We note here that we are without power to award a contract. *CCL Serv. Corp. v. United States*, 43 Fed.Cl. 680, 683 (1999).

**6.** Furthermore, plaintiff's response to defendant's motion to dismiss notes that it had "standing to bring this protest, pursuant to 28 U.S.C. § 1491(b)." P's Resp. to D's Mot. to Dismiss at 6.

**7.** In its motion, defendant raises a third objection to subject matter jurisdiction by arguing that plaintiff cannot premise said jurisdiction upon 28

## A. Lack of Solicitation and Bid

■ The government's first challenge to Innovative Resources' standing is based on the fact that GSA has not issued a solicitation, nor has Innovative Resources submitted a bid. This is so because the GSA has proceeded under the Section 8(a) sole source provisions, found at 48 C.F.R. § 19.800. Thus, the government argues that Innovative Resources cannot "establish that there is [an] *outstanding* [ ] specific viable solicitation by a government agency with respect to which they have been denied the right to participate in the competitive process." *Omega World Travel, Inc. v. United States*, 9 Cl.Ct. 623, 628 (1986). Moreover, defendant argues that, "since [plaintiff][ ] was not requested to bid or submit a response to an RFP and in fact did not submit any bid," the court has no jurisdiction. *Data Transformation Corp. v. United States*, 13 Cl.Ct. 165, 172 (1987). This is so because, "to bring a bid protest [action] in this court, the plaintiff must have competed in a government-sponsored solicitation...." *Blue Water Environmental, Inc. v. United States*, 60 Fed.Cl. 48, 51 (2004).

In response to the government's challenge, plaintiff pursues a novel argument. Specifically, Innovative Resources contends as follows: First, plaintiff acknowledges that the procurement at issue is for less than $3,000,000.00, consequently, said acquisition is properly a sole source (i.e., non-competitive) Section 8(a) procurement, pursuant to 48 C.F.R. § 19.805–1. Further, plaintiff contends that the SBA violated the sole source regulations by recommending *two* Section 8(a) firms, allegedly in violation of 48 C.F.R

U.S.C. § 1491(a). D's Mot. to Dismiss at 13. As set forth in note 6 and its accompanying text, plaintiff does not purport to bottom jurisdiction on 28 U.S.C. § 1491(a). Thus, we need not take up discussion with respect to defendant's third objection.

**8.** Plaintiff concedes that it must show that it is an interested party in order to have standing to bring this bid protest. Therefore, we need not expend significant time or effort on this issue. Nonetheless, we note for clarity that an interested party is defined as an "actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2).

§ 19.803(b)(4)(i), which provides that "[i]f sole source request—(A) The reasons why the [recommended Section 8(a)] *firm* is considered suitable for this particular acquisition . . . ." [9] (emphasis added). Therefore, following plaintiff's argument, the SBA's "violation" and the GSA's subsequent selection of one of the two Section 8(a) firms "converted" the procurement from a sole source acquisition to a competitive procurement. Accordingly, plaintiff asserts that GSA must comply with the requirements for competitive contracting, "including the issuance of a Solicitation and the request for proposals." P's Resp. to D's Mot. to Dismiss at 8. Finally, plaintiff asserts that GSA's failure to issue a solicitation "deprived [plaintiff of] the right of properly competing for the contracts for which it was eligible, and [plaintiff] is therefore an interested party." *Id.* at 9.

The creative and meandering argument presented by the plaintiff is unpersuasive. It fails foremost because it is grounded upon a reading of 48 C.F.R. § 19.800 that is inconsistent with the plain terms thereof. In essence, plaintiff argues that, in a sole source Section 8(a) procurement, the SBA may recommend only one Section 8(a) firm, and the contracting activity (here, GSA) has little choice but to blindly accept the SBA's recommendation. Following plaintiff's logic, permitting an agency to select between two eligible Section 8(a) participants is not only improper, but also transforms the procurement from a sole source acquisition to a competitive procurement. This argument, in our view, defies logic and fails to reflect the intent of the regulations. For example, plaintiff fails to reconcile its interpretation that the SBA may only recommend *one* firm with 48 C.F.R. § 19.803(b). Said regulation provides that "[t]he SBA identifies a specific requirement for a particular [Section] 8(a) firm or *firms* and asks the agency contracting activity to offer the acquisition to the [Section] 8(a) Program for the *firm(s).*" 48 C.F.R. § 19.803(b) (emphasis added). Furthermore, plaintiff's position that the agency may not select the Section 8(a) firm in a sole source procurement, but must instead accept

the SBA's recommendation is undermined by 48 C.F.R. § 19.804-3(b), which states that "[i]f the acquisition is accepted as a sole source, the SBA will advise the contracting activity of the [Section] 8(a) firm selected for negotiation. Generally, *the SBA will accept a contracting activity's recommended source.*" (Emphasis added). Thus, viewing the FAR provisions in context, we must agree with the government that, in a Section 8(a) sole source procurement, the procuring agency (here, GSA) may either permit the SBA to select the subcontractor without its input, or it may select the Section 8(a) firm to provide the services at issue. *See also* 13 C.F.R. § 124.502(c)(12) (which states that the procuring activity may nominate a Section 8(a) firm for a sole source procurement).

■ We cannot accept plaintiff's interpretation of the FAR provisions regarding sole source Section 8(a) acquisitions. In our view, the SBA and the GSA acted within the strictures of the applicable regulations when two Section 8(a) firms were nominated by the SBA, and GSA subsequently chose between the two eligible firms. In this connection, then, we cannot accept plaintiff's argument that the subject procurement is anything other than a Section 8(a) sole source acquisition. Thus, we must reject plaintiff's argument that the government must be required to issue a solicitation for the San Bruno contract. Resultantly, we also reject plaintiff's argument that it became an interested party when the government failed to issue a solicitation. Furthermore, as plaintiff concedes that there was no solicitation, and it did not submit a bid, we are constrained to find that plaintiff is not an interested party, and thus lacks standing to bring this pre-award bid protest. *Data Transformation,* 13 Cl.Ct. at 172. Therefore, we must GRANT defendant's motion on this basis.

### B. Privity of Contract

Because we held, *supra,* that the government has not issued a solicitation relative to the San Bruno procurement, and Innovative

---

**9.** Plaintiff states that if the SBA "intends to use [the sole source][ ] method of selection initiation, [it] is required to submit the name of *one* [Section] 8(a) contractor to the procuring agency. . . ." P's Resp. to D's Mot. to Dismiss at 7 (emphasis in original).

Resources has not submitted a bid, we must also hold that GSA and Innovative Resources are not in privity. This is so because "[t]he jurisdictional basis for such suits[, namely, bid protest actions,] is the alleged **breach of 'an implied contract** to have the involved bids fairly and honestly considered.'" *Southfork Sys. v. United States,* 141 F.3d 1124, 1132 (Fed.Cir.1998) (quoting *United States v. John C. Grimberg Co.,* 702 F.2d 1362, 1367 (Fed.Cir.1983)) (emphasis added). Thus, lacking a solicitation and a responsive bid thereto, there is no implied contract between the parties. Moreover, there is clearly no express contract between the parties. Absent *any* contract between the parties—implied or express—there can be no parties in *privity* of contract. Consequently, plaintiff lacks standing to pursue this matter for lack of privity, and this court in turn lacks subject matter jurisdiction.

## IV. CONCLUSION

Based upon all of the foregoing, the court hereby GRANTS the defendant's motion to dismiss, pursuant to RCFC 12(b)(1).

The Clerk shall enter judgment accordingly.